**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Estate of Nicholas Edward Bensfield, by and through its Court Appointed Personal Representative, Shirley Bensfield,<br><br>Plaintiff,<br><br>v.<br><br>Liberty Mutual Fire Insurance Company, a foreign corporation doing business in Arizona,<br><br>Defendant. | No. CV-17-00797-PHX-DGC<br><br>**ORDER** |

Plaintiff, the Estate of Nicholas Edward Bensfield, filed a complaint in state court against Defendant Liberty Mutual Fire Insurance Company. Doc. 1 at 10-18. Liberty Mutual removed the action to this Court based on diversity jurisdiction. *Id.* at 1-8. Liberty Mutual now moves for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). Doc. 10. The motion is fully briefed, and no party requests oral argument. Docs. 13, 16. For reasons stated below, the Court will grant the Estate leave to amend its complaint and withhold a final ruling on Defendant's motion.

**I.  Background.**

The Court must take the facts alleged in the complaint as true for purposes of this motion. *Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 955 (9th Cir. 2004). Liberty Mutual provided auto insurance coverage, including underinsured motorist coverage, to

Nicholas Edward Bensfield. Doc. 1 at 11, ¶ 5. On November 12, 2014, an underinsured motorist caused a collision that injured Bensfield. *Id.* at 11, ¶¶ 6-7. As a result of the accident, Bensfield incurred medical expenses and suffered various general damages, including pain, disability, disfigurement, anxiety, and loss of enjoyment of life. *Id.* at 11, ¶ 7. The insurer for the motorist paid its policy limits to Bensfield, but this sum did not cover all of Bensfield's losses. *Id.* at 12, ¶ 14; Doc. 13 at 3.

On March 12, 2015, Bensfield notified Liberty Mutual of his underinsured motorist claim. Doc. 1 at 11, ¶ 8. Four days later, Liberty Mutual confirmed coverage and requested Bensfield's authorization to review his medical records. *Id.* at 12, ¶ 10. Unfortunately, on March 25, 2016, and before Liberty Mutual finished its evaluation, Bensfield died. *Id.* at 10, ¶ 1. The Estate does not allege that Bensfield's death was related to the auto accident and does not assert a claim for wrongful death. *See* Doc. 1 at 10-18. Approximately four months later, Liberty Mutual learned of Bensfield's death, completed its evaluation, and issued a check to the Estate for the balance of Bensfield's medical expenses. Doc. 10 at 2; *see* Doc. 1 at 18. The Estate does not dispute that this payment, when combined with the payment from the motorist's insurance company, covered all of Bensfield's medical expenses. *See* Doc. 13.

The complaint asserts a negligence claim in connection with Liberty Mutual's processing of Bensfield's insurance claim (Count One), a first-party bad faith claim (Count Two), and a request for punitive damages (Count Three). Doc. 1 at 12-17.

**II.    Rule 12(c) Standard.**

A motion for judgment on the pleadings under Rule 12(c) "'is properly granted when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law.'" *United States v. Teng Jiao Zhou*, 815 F.3d 639, 642 (9th Cir. 2016) (quoting *Fajardo v. Cty. of L.A.*, 179 F.3d 698, 699 (9th Cir. 1999)). Like a Rule 12(b)(6) motion to dismiss, a motion for judgment on the pleadings is directed at the legal sufficiency of the opposing party's pleadings. *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). The Court will assess the

legal sufficiency of the Estate's claims under Arizona law. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-79 (1938).

**III. Analysis.**

### A. Count One – Negligence.

Count One alleges that Liberty Mutual negligently handled Bensfield's claim. Doc. 1 at 12-14. Liberty Mutual argues that Arizona law prevents an insured from suing its insurer for negligent handling of a claim. Doc. 10 at 3-4. The Estate concurs, conceding that "a cause of action based solely on negligence which does not rise to the level of bad faith is precluded under Arizona law." Doc. 13 at 1. The Court agrees with both parties. Arizona law prohibits claims against insurers for negligent claims processing. *Miel v. State Farm Mut. Auto. Ins. Co.*, 912 P.2d 1333, 1340 (Ariz. Ct. App. 1995). This bar applies to the Estate – "an insured or his assignee may not sue his insurer for negligent handling of claims that is separate and distinct from the claim of breach of contract or bad faith." *IDS Prop. Cas. Ins. Co. v. Gambrell*, 913 F. Supp. 2d 748, 752 (D. Ariz. 2012); *see also Meineke v. GAB Bus. Servs., Inc.*, 991 P.2d 267, 271 (Ariz. Ct. App. 1999). The Estate's negligence claim fails as a matter of law.

### B. Count Two – Bad Faith.

Liberty Mutual argues that it is entitled to judgment on the bad faith claim because the damages the Estate seeks are unrecoverable. Doc. 10 at 4-8. Liberty Mutual relies on Arizona's survival statute, which precludes the recovery of pain and suffering damages after an injured person's death:

> Every cause of action, except a cause of action for damages for breach of [a] promise to marry, seduction, libel, slander, separate maintenance, alimony, loss of consortium or invasion of the right of privacy, shall survive the death of the person entitled thereto or liable therefor, and may be asserted by or against the personal representative of such person, *provided that upon the death of the person injured, damages for pain and suffering of such injured person shall not be allowed.*

A.R.S. § 14-3110 (emphasis added). Liberty Mutual notes that a claim for loss of life's enjoyment is a claim for pain and suffering in Arizona. Doc. 10 at 5 (citing *Quintero v. Rogers*, 212 P.3d 874, 877-78 (Ariz. Ct. App. 2009)).

In response to Liberty Mutual's motion, the Estate does not argue that it seeks to recover damages other than pain and suffering, such as medical expenses or other forms of financial loss. Instead, the Estate concedes that the harm at the root of its claim is Bensfield's pain and suffering: "Through its unlawful conduct, Liberty Mutual successfully avoided paying Bensfield's general damages including pain, discomfort, suffering, disability, disfigurement, anxiety, and loss of enjoyment of life that resulted from the subject collision." Doc. 13 at 7. The Estate argues, nonetheless, that its claim is not barred by § 14-3110 because it is suing Liberty Mutual for bad faith, not for Bensfield's pain and suffering. The Estate argues that it "has not alleged a cause of action for pain and suffering. Instead, the Estate alleged a cause of action for first-party insurance bad faith." Doc. 13 at 6.

Before his death, Bensfield asked Liberty Mutual to pay the damages caused by the underinsured motorist and not covered by the motorist's insurance company. Doc. 1 at 11-12, ¶¶ 8-14. Because the motorist's insurance company and Liberty Mutual paid for all of Bensfield's medical expenses, the only category of damages that remains unsatisfied is the claim for pain and suffering. The Estate in effect argues that these damages were transformed upon Bensfield's death into damages for insurance bad faith. Admittedly, there is a superficial logic to the Estate's argument – but for Liberty Mutual's bad faith delay in processing his claim, Bensfield would have recovered the damages for his pain and suffering. For several reasons, however, the Court is not persuaded that the Estate can avoid the effect of § 14-3110 simply by re-naming the damages it seeks to recover.

First, the Estate argues that it is asserting a "cause of action" for bad faith, not a "cause of action for pain and suffering." Doc. 13 at 6. But § 14-3110 does not bar causes of action for pain and suffering, it bars the recovery of pain and suffering damages in

every cause of action that survives the death of the injured person. The statute is a survival statute and provides that most causes of action survive the death of the plaintiff: "Every cause of action," except a few specific exceptions, "shall survive the death of the person entitled thereto[.]" A.R.S. § 14-3310; *see also In re Guardianship/ Conservatorship of Denton*, 945 P.2d 1283, 1288 (Ariz. 1997) ("the survival statute applies to all causes of action"). In all of these surviving causes of action, including insurance bad faith, the statute states that "damages for pain and suffering of such injured person shall not be allowed." A.R.S. § 14-3310. Thus, the Estate cannot recover damages for Bensfield's pain and suffering just because it has brought an action for bad faith.

Second, if an insured successfully asserts a claim against an insurance company for the bad faith denial of benefits, the insured is entitled to recover two things: the benefits, and damages caused by the insurance company's bad faith. *See Farr v. Transamerica Occidental Life Ins. Co. of Cal.*, 699 P.2d 376, 386 (Ariz. Ct. App. 1984). Bad faith damages are different than insurance policy benefits. And yet this case seeks to recover benefits. The complaint states:

> 28. As a direct result of Liberty Mutual's breach of its duty of care to Nicholas Bensfield in the handling of his claim, Liberty Mutual did not pay Nicholas Bensfield general damages including pain, discomfort, suffering, disability, disfigurement, anxiety, and loss of enjoyment of life that resulted from the subject collision.
>
> 29. As a direct result of Liberty Mutual's breach of its duty of care to Nicholas Bensfield in the handling of his claim, Nicholas Bensfield's Estate has been damaged by not having the compensation to which Nicholas Bensfield was legally entitled before his death.

Doc. 1 at 14. In other words, the Estate's alleged injury is that it did not receive the money that should have been paid as a benefit under the policy for Bensfield's pain and suffering.

This language is found in the negligence count of the complaint. The bad faith count is more general, alleging only that the Estate "suffered damages, expense, financial

consequences, and other detriment as may be prove[d] at trial." *Id.* at 16, ¶ 48. But in its response to Liberty Mutual's motion, the Estate identifies no form of bad faith damages that it seeks to recover other than the losses for pain and suffering. Rather, it again confirms that pain and suffering lies at the heart of its claim: "Liberty Mutual successfully avoided paying Bensfield's general damages including pain, discomfort, suffering, disability, disfigurement, anxiety, and loss of enjoyment of life that resulted from the subject collision." Doc. 13 at 7. In effect, the Estate seeks to recover the insurance policy benefit Bensfield failed to receive while alive, not some other category of bad faith damages. The Court cannot conclude that the pain and suffering damages was somehow transformed into another category of damages when Bensfield died.

Third, it is important to remember that Bensfield could recover from Liberty Mutual only those damages for which the underinsured motorist was liable. Doc. 1 at 11, ¶ 5. If the motorist owned sufficient assets to pay for the damages he caused, if Bensfield sued him for those damages, and if Bensfield died before the lawsuit was concluded, Bensfield's claim for pain and suffering would have abated under § 14-3310, and the Estate could not have recovered those damages from the motorist. *See Eades v. House*, 413 P.2d 576, 578 (Ariz. Ct. App. 1966) ("The cause of action of the plaintiff for pain and suffering remains a cause of action for pain and suffering until it is reduced to a judgment. There being no judgment in the instant case for and on behalf of plaintiff for her pain and suffering, the cause of action abates upon her death."); *Harrington v. Flanders*, 407 P.2d 946, 948 (Ariz. Ct. App. 1965) (same). And if Liberty Mutual essentially stands in the shoes of the underinsured motorist, it follows that Liberty Mutual cannot be liable for the abated pain and suffering damages either.

Fourth, the Estate cannot claim that it acquired a fully-accrued and final claim for damages upon Bensfield's death. As noted in the cases cited above, Bensfield's claim would not have abated if he had obtained a judgment for the damages before he died, *Eades*, 413 P.2d at 578, but Bensfield obtained no such judgment. Similarly, Arizona law holds that an insured with an uninsured motorist claim for personal injuries – which

the Court views as essentially equivalent to an underinsured motorist claim – does not have the right to collect on that claim until the insured either executes a release or obtains an award of the benefits. *Voland v. Farmers Ins. Co. of Arizona*, 943 P.2d 808, 813 (Ariz. Ct. App. 1997). Bensfield did not obtain an award of benefits or sign a release before he died. Because Bensfield's underinsured motorist claim had not been reduced to a judgment, award, or release, these cases hold that his claim was not yet payable, and it abated upon his death. "The Legislature apparently contemplated that once an injured person is dead[,] he cannot benefit from an award for his pain and suffering." *Harrington v. Flanders*, 407 P.2d 946, 948 (Ariz. Ct. App. 1965) (interpreting A.R.S. § 14-447, the predecessor to § 14-3110).

Fifth, the Minnesota Supreme Court addressed similar arguments when it held that damages for pain and suffering cannot be recovered by a decedent's estate simply through re-labeling of the damages. It aptly explained:

> We conclude that the primary cause of the damages sought to be recovered as [underinsured motorist] benefits is the injury Alice Beaudry suffered in the auto accident. The Beaudrys contend they are not seeking damages for pain and suffering, but this argument elevates form over substance. If the [underinsured motorist] claim can circumvent the survival statute, the [underinsured motorist] claimant recovers damages for pain and suffering up to her death. . . . [W]e look to the nature of the damages sought rather than the form of the remedy. Under this test, it is inescapable that Alice Beaudry's claim, sounding primarily in tort for injury to the person, abated with her death.

*Beaudry v. State Farm Mut. Auto. Ins. Co.*, 518 N.W.2d 11, 14 (Minn. 1994), *overruled on other grounds by Oanes v. Allstate Ins. Co.*, 617 N.W.2d 401, 406 (Minn. 2000).

The Court agrees that it should look to the nature of the damages sought rather than the form of the remedy. The Estate may be asserting a claim for bad faith, but it plainly is seeking to recover damages for Bensfield pain and suffering. To conclude otherwise would elevate form over substance and run contrary to the clear intent of the Arizona statute.

In summary, the Court concludes that the Estate cannot recover the damages identified in its complaint and its response.

**C.     Leave to Amend.**

The Estate seeks leave to amend its complaint to add a breach of contract claim. Doc. 13 at 8. But this request also appears directed, ultimately, at recovering the pain and suffering benefits that the Estate claims Liberty Mutual owed under the insurance contract. This too would be barred by § 14-3110, for all of the reasons set forth above. *See Beaudry*, 518 N.W.2d at 14 (granting summary judgment on survivor's breach of contract claim for pain and suffering benefits).

As noted above, claims for insurance bad faith and breach of contract survive the death of Bensfield under § 14-3110. The Estate can assert such claims, but it cannot use them to recover damages for Bensfield's pain and suffering. Thus, if the Estate can identify damages other than Bensfield's pain and suffering (unpaid medical expenses or other financial losses Bensfield incurred, for example), it may proceed with this case. But if it has no such damages – if its only form of recovery is the re-labeled pain and suffering damages – judgment must be entered against the Estate because it has nothing that can be recovered under § 14-3110, under any legal theory.

**D.     Count Three – Punitive Damages.**

The Court will grant judgment on the Estate's negligence claim. If the Court also grants judgment to Liberty Mutual on the bad faith claim asserted in Count Two, the request for an award of punitive damages in Count Three will fail as a matter of law. The Estate will have no surviving legal claim or any actual, compensatory damages on which punitive damages can stand. *See Wyatt v. Wehmueller*, 806 P.2d 870, 874 (Ariz. 1991) ("A plaintiff must be entitled to actual damages before being entitled to punitive damages."); *Saucedo ex rel. Sinaloa v. Salvation Army*, 24 P.3d 1274, 1280-81 (Ariz. Ct. App. 2001) ("our common law mandates that a plaintiff suffer actual damages as a result of the underlying tort before a claim of punitive damages can be entertained"); *Magma Copper Co. v. Shuster*, 575 P.2d 350, 352-53 (Ariz. Ct. App. 1977) (nominal damages

cannot support a punitive damages judgment). The Court will reserve judgment on this issue until after the Estate has had an opportunity to plead recoverable damages.

### E. Further Proceedings.

On or before **October 12, 2017**, the Estate may submit a proposed amended complaint and an accompanying memorandum (no longer than seven pages) describing the damages other than pain and suffering that the Estate seeks to recover in the amended complaint. Within 14 days of that filing, Liberty Mutual may file a seven-page response. No reply should be filed unless requested by the Court. The Court will then determine whether the Estate does in fact have a claim for damages that can proceed. If it does not, or if the Estate elects not to file such a proposed amended complaint, the Court will enter a final judgment for Liberty Mutual for the reasons set forth above.

**IT IS ORDERED:**

1. Liberty Mutual's motion for judgment on the pleadings (Doc. 10) is **granted in part**. Judgment is granted on the Estate's negligence claim (Count One).

2. The parties shall engage in further proceedings as instructed above.

Dated this 22nd day of September, 2017.

_____
David G. Campbell
United States District Judge